FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2009 JUN -8 PM 4: 38

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOMAS SWINNER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-10694** |
| **BURL CAIN, WARDEN** | **SECTION "N"(6)** |

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the following reasons, it is hereby recommended that the instant petition be **DISMISSED WITH PREJUDICE**.

### PROCEDURAL HISTORY

On June 6, 2000, petitioner, Thomas Swinner, a prisoner incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was found guilty, following trial by jury in

____ Fee_____
____ Process_____
_X_ Dktd_____
____ CtRmDep_____
____ Doc. No._____

the Twenty-Second Judicial District Court for the Parish of St. Tammany, of distribution of marijuana within one thousand feet of property used for a recreational park.[1] On October 20, 2000, petitioner was sentenced to thirty years incarceration to be served without benefit of parole, probation or suspension of sentence. A $50,000.00 fine was also levied against petitioner.[2] On November 14, 2001, petitioner's conviction and sentence were affirmed by the Louisiana First Circuit Court of Appeal. *State v. Swinner*, No. 2001 KA 0455 (La. App. 1 Cir. Nov. 14, 2001) (unpublished decision).[3] On June 18, 2004, the Louisiana Supreme Court denied the writ application which petitioner filed seeking relief in connection with the state appellate court's affirmance of his conviction and original thirty-year sentence. *State v. Swinner*, 876 So.2d 792, No. 2002 KO 0085 (La. 2004).

On May 17, 2002, the state district court adjudicated petitioner to be a third-felony offender and sentenced him to life imprisonment.[4] On May 9, 2003, the Louisiana First Circuit Court of Appeal affirmed petitioner's habitual offender adjudication and life sentence. *State v. Swinner*, No. 2002 KA 1953 (La. App. 1 Cir. May 9, 2003) (unpublished

---

[1]State rec., vol. 2 of 3, p. 309.

[2]State rec., vol. 2 of 3, p. 325.

[3]A copy of the Louisiana First Circuit's unpublished opinion is contained in the State rec., vol. 3 of 3.

[4]State rec., vol. 2 of 3, pp. 333-338.

decision).[5] On May 14, 2004, the Louisiana Supreme Court denied the writ application

which petitioner filed seeking relief in connection with the state appellate court's affirmance

of his multiple offender adjudication and life sentence. *State v. Swinner*, 872 So.2d 508, No.

2003 KO 1717 (La. 2004). On May 24, 2004, petitioner filed a motion for rehearing in

connection with the state supreme court's adverse May 14, 2004 decision.[6] On September

3, 2004, the Louisiana Supreme Court denied petitioner's motion for rehearing. *State v.*

*Swinner*, 882 So.2d 591, No. 2003 KO 1717 (La. 2004).

On May 13, 2005, petitioner filed an application for post-conviction relief with

the state district court.[7] Petitioner's efforts in this regard culminated on September 29, 2006,

---

[5]A copy of the Louisiana First Circuit's unpublished opinion is contained in the State rec., vol. 3 of 3.

[6]A copy of petitioner's rehearing application, attained from the Clerk of Court's Office for the Louisiana Supreme Court, is attached hereto as it was not contained in the State record provided to this court. The May 24, 2004 filing date of petitioner's application for rehearing represents the date petitioner signed his rehearing application. In *Causey v. Cain*, 450 F.3d 601, 603-607 (5th Cir. 2006), it was determined that the "mailbox rule" would be utilized in determining the filing date of state court pleadings for purposes of ascertaining the timeliness of a federal habeas petition. Under this rule, a pleading filed by a prisoner acting *pro se* is considered to be filed on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

[7]A copy of petitioner's post-conviction application is contained in the State rec., vol. 3 of 3.

when the Louisiana Supreme Court denied his writ application. *State ex rel. Swinner v. State*, 937 So.2d 855, No. 2006 KH 0708 (La. 2006).

On November 21, 2006, petitioner filed the instant federal habeas corpus application. Petitioner raises the following claims: 1) Prosecution presented false and misleading evidence to the jury and the appeal court; 2) Insufficient evidence was submitted to support conviction/entrapment defense was improperly rejected;[8] 3) Petitioner lacked the *mens rea* to constitutionally be found guilty of violating LSA-R.S. 40:981.3; 4) Petitioner was denied effective assistance of counsel; 5) Petitioner's habitual offender proceeding was unconstitutional; and, 6) Petitioner's habitual offender sentence was unconstitutional. In its response, the State concedes that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). The State, however, contends that petitioner's habeas application is untimely. For the following reasons, the court disagrees.

## TIMELINESS

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner has one year within which to bring his habeas corpus claims pursuant to 28 U.S.C. § 2254, with this one year period commencing to run from "the latest of" either the

---

[8]Claim 2) encompasses claims two and four, as set forth in petitioner's supporting brief (rec. doc. 1).

date the petitioner's state judgment became final or the expiration of his time for seeking review.[9] *See* 28 U.S.C. § 2244(d)(1) (West 2009), as amended by the AEDPA, P.L. 104-132, 110 Stat. 1220. In this case, petitioner's conviction became final on September 3, 2004, when the Louisiana Supreme Court denied his application for rehearing in connection with the court's May 14, 2004 denial of his direct appeal of his multiple offender adjudication and life sentence.[10] Petitioner's time for seeking review expired on December 2, 2004, 90 days following his final state court judgment, when his time for filing a petition for a writ of certiorari with the United States Supreme Court expired. *See* Sup.Ct.R. 13(1); *see also Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999), *cert. denied*, 529 U.S. 1099, 120 S.Ct. 1834, 146 L.Ed.2d 777 (2000); *Habteselassie v. Novak*, 209 F.3d 1208, 1209 (10th Cir. 2000);

---

[9] The AEDPA applies to this case as it was filed after the enactment of the AEDPA, or after April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2060, 138 L.Ed.2d 481 (1997).

[10] In its Response (rec. doc. 6, pp. 1-2), the State asserts that June 18, 2004, the date the Louisiana Supreme Court denied petitioner's writ application seeking relief in connection with the state appellate court's affirmance of his conviction and original 30-year sentence, is the date petitioner's conviction became final for purposes of determining the timeliness of the instant action. According to the State, petitioner's motion for rehearing does not toll the one-year limitation period and, therefore, the date the rehearing motion was denied, September 3, 2004, should not be considered when determining the finality of petitioner's conviction for purposes of determining the timeliness of the instant action. The State, however, is mistaken. In *Wilson v. Cain*, 2009 WL 840246, *4 (5th Cir. Apr. 1, 2009), the Fifth Circuit determined that a motion for rehearing timely filed, as petitioner's was, "within the 14-day period permitted under Louisiana law for filing such a motion", must be considered in determining, under § 2244(d)(1), the finality of a habeas petitioner's conviction.

*Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000). Thus, petitioner had a year from December 2, 2004, until December 2, 2005, to timely seek habeas corpus relief.

Petitioner did not file the instant action until November 21, 2006, almost a year after his limitation period had expired. Thus, petitioner's federal habeas corpus application must be dismissed as untimely, unless the one-year statute of limitations period was interrupted as set forth in 28 U.S.C. § 2244(d)(2). Under that statutory provision, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

On May 13, 2005, petitioner filed an application for post-conviction relief with the state district court, thereby suspending the running of prescription. At that point, approximately five months of petitioner's twelve-month prescriptive period had expired.

By virtue of petitioner's filing of a state post-conviction application, his statute of limitations remained suspended until September 29, 2006, when the Louisiana Supreme Court denied his post-conviction writ application. *State ex rel. Swinner v. State*, 937 So.2d 855 (La. 2006). Petitioner filed the instant habeas corpus action less than two months later, on November 21, 2006. Accordingly, the instant matter is clearly not time-barred and, as such, the court shall proceed to address the merits of petitioner's claims following its review of the pertinent facts and applicable standard of review.

## FACTS[11]

On the morning of May 3, 1999, the defendant and his friend, James Tyler, entered a store named Fastbucks in Slidell, Louisiana. Fastbucks was in fact a store set up by the St. Tammany Parish Sheriff's Department as part of a sting operation under the direction of Captain Tim Lentz. This operation was intended to assist in getting drugs off the street, as well as to recover stolen property. The store was set up as a secondhand shop and was manned by undercover narcotics officers working for the sheriff's office. In addition to purchasing items brought in for sale and having other secondhand items for sale, the officers had stocked the store with certain items normally associated with drug trafficking, such as pinkie scales, rolling papers, and water pipes. Cameras and microphones were placed in the store in order to record any transactions that occurred.

When the defendant and Tyler first entered the store, they asked the agents behind the counter if they purchased car speakers. When the agents answered in the affirmative, the defendant left the store and came back in with a box containing the speakers and placed them on the counter.

The defendant proceeded to negotiate with the officers regarding a satisfactory price for his speakers. He was first offered sixty dollars for the speakers, which the

---

[11]The facts are taken from the November 14, 2001 decision rendered by the Louisiana First Circuit Court of Appeal, *State v. Swinner*, No. 2001 KA 0455 (La. App. 1 Cir. 2001) (unpublished decision).

defendant rejected as too low. In the course of these negotiations, one of the detectives asked the defendant and his friend if they had any "herb" to go with the speakers. The detective indicated that he would be able to give a better price if they had a quarter ounce of marijuana to add in with the speakers. Specifically, the detective said he could pay one hundred dollars for the marijuana and speaker box together.

James Tyler looked at the defendant and indicated to him that it was his call to make. Tyler then told the detectives that he did not have a quarter ounce, but that he could give them some to smoke but it would cost them "a paper or two." Tyler subsequently produced a plastic bag from his pants pocket that contained a substance later determined to be marijuana, and placed it on the counter. As Tyler took some of the marijuana out of the bag and put it on the counter, the defendant came up to the counter. He told Tyler not to give all of his stuff away, and picked up the marijuana to see how much had been given away. The defendant then placed it back on the counter. After the marijuana changed hands, Tyler advised the detectives that it was up to the defendant whether or not he still wanted to get rid of the speakers because that was his deal. The defendant subsequently agreed to a price of seventy-five dollars, and accepted a check from the detectives for that amount. A four-dollar pack of rolling papers was also part of the transaction. There was no indication in either the video or the testimony at trial that any money, or anything else of value, was given to Tyler by the undercover officers in exchange for the marijuana.

## **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5ᵗʰ Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations

omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## ANALYSIS

### Claim 1): Prosecution Presented False and Misleading Evidence

Petitioner claims that the prosecutor knowingly presented false and misleading evidence to the jury. "To establish a due process violation based on the State's knowing use of false or misleading evidence, [a petitioner] must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew that the evidence was false." Nobles v. Johnson, 127 F.3d 409, 415 (5th Cir. 1997) (citing Giglio v. United States, 405 U.S. 150, 153-154 (1972); Boyle v. Johnson, 93 F.3d 180, 186 (5th Cir.1996)). "Evidence is 'false' if, inter alia, it is 'specific misleading evidence important to the prosecution's case in chief.'" Id. (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)). "False evidence is 'material' only 'if there is any reasonable likelihood that [it] could have affected the jury's verdict.'" Id. (quoting Westley v. Johnson, 83 F.3d 714, 726 (5th Cir.1996)).

Petitioner claims that the prosecutor knowingly elicited false testimony from St. Tammany Parish Sheriff's Office Detective Roy Hartzog. Petitioner charges that the

10

prosecutor "manipulated the sequence of events" by playing the videotape of the drug transaction out of sequence, thereby prompting testimony from Detective Hartzog to the effect that petitioner was in charge of the decision to sell not only speakers but also marijuana to the undercover agents. Petitioner points to the following testimony from Detective Hartzog:

BY MR. HOFFSTEADT (prosecutor):

Q. What did you say Mr. Tyler said to Mr. Swinner after you asked for a quarter [of marijuana]?

A. He looked at Mr. Swinner and stated, "That's your call."

Q. Okay.

A. Mr. Tyler then produced a plastic bag from his pants pocket which contained the suspected marijuana and placed an amount of it on the counter. Let me go back a little bit. Prior to that he said he didn't have a quarter [of marijuana] but he would give us some to smoke. He then began to take some out of the bag and placing [sic] it on the counter. Mr. Swinner then walked up to see how much he was putting on the counter and told Mr. Tyler not to give all of his stuff away. He then stopped and didn't put anymore on the counter. Mr. Swinner picked it up and looked and inspects how much Mr. Tyler had put on the counter. Then we negotiated a price for the speakers and the marijuana. We subsequently agreed upon a price of seventy-five dollars ($75). Mr. Swinner had also asked for some rolling papers, he referred to them as skins, which is street lingo. So along with the seventy-five dollars ($75) he was given the pack of papers.[12]

BY MR. HOFFSTEADT:

---

[12]State rec., vol. 2 of 3, p. 216, lines 4-25; *see also* Federal rec., doc. 1, petitioner's Brief in Support of Habeas Corpus Relief, p. 12.

Q. When you were questioning about whether you could get a quarter [of marijuana], to whom was the question asked if that was their call?

A. It was asked of Mr. Swinner.

Q. By whom?

A. By Mr. Tyler.

Q. And you were present when the marijuana was put on the table?

A. Yes, sir, I was.

Q. And who stated, "Don't give all my shit away"?

A. Mr. Swinner.[13]

According to petitioner, the above testimony was the result of the prosecutor's manipulation of the videotape by rewinding the tape and playing it back at different points, thereby taking bits and pieces of the taped conversation out of sequence so that it appeared that Tyler's words, "that's your call", to petitioner, were made in reference to the sale of the marijuana, rather than the sale of the speakers. A review of the trial transcript, however, reflects no manipulation of the tape by the prosecutor. Instead, the transcript reflects that the prosecutor asked permission from the court to play the tape. The court granted permission and advised jurors that they would not be allowed to bring the videotape into the jury room during deliberations and that they should speak up if they experienced any problems seeing

---

[13]State rec., vol. 2 of 3, p. 222, lines 7-17; *see also* Federal rec., doc. 1, petitioner's Brief in Support of Habeas Corpus Relief, p. 12.

or hearing the videotape.[14] At that point, the prosecutor commenced playing the videotape for jurors, pausing briefly in the beginning so that Detective Hartzog could positively identify the persons depicted on the tape. Thereafter, the tape played straight through, without any rewinding of the tape by the prosecutor.[15] Once jurors had viewed the videotape and seen for themselves what transpired, the prosecutor asked Detective Hartzog specifics with regard to what the videotape depicted. The jurors, having watched the tape, could judge for themselves the accuracy of Detective Hartzog's testimony. There is no evidence of any tape manipulation on the part of the prosecutor in an effort to elicit false testimony from Detective Hartzog. Plaintiff's claim for habeas corpus relief based upon such a charge is without merit.

### Claim 2) Insufficient Evidence to Support Conviction/Entrapment Defense Improperly Rejected

Petitioner argues that there was insufficient evidence to support his conviction because his entrapment defense was improperly rejected in violation of Supreme Court precedent. The applicable Supreme Court precedent, for purposes of determining the sufficiency of the evidence brought against petitioner and viability of his entrapment defense, was enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In *Jackson*, the Supreme Court held whether a claim of insufficient evidence/improper

---

[14]State rec., vol. 2 of 3, p. 220, lines 29-32; p. 221, lines 1-13.

[15]State rec., vol. 2 of 3, p. 221, lines 14-22.

rejection of defense was sufficient for purposes of attaining habeas corpus relief depended on whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could not have rejected the defense and found, beyond a reasonable doubt, the petitioner guilty of the essential elements of the crime.

When reviewing an insufficient evidence/improper rejection of defense claim in the context of a post-AEDPA habeas application, a federal court may grant relief only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal law, as determined by the Supreme Court, to the facts of the case. *See* 28 U.S.C. § 2254 (d)(1). The Louisiana First Circuit Court of Appeal, in addressing the instant issue in connection with petitioner's direct appeal, began its analysis by reviewing the State's burden of proof.

> In order to convict the defendant of distribution of marijuana within a thousand feet of a recreational area, the prosecution was required to prove in part that the defendant had the specific intent to commit the crime. La. R.S. 14:10(1) defines specific intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Because specific intent is a state of mind, it need not be proven as a fact, but may be inferred from the surrounding circumstances and the defendant's actions. *State v. Mitchell*, 99-3342, p. 6 (La. 10/17/00), 772 So.2d 78, 82.
>
> All persons can be convicted as principals to a crime if they are "concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." La. R.S. 14:24. An individual may only be convicted as a principal, however, for those crimes which he personally had the requisite mental state. *State v. Mitchell, Id.*

14

*State v. Swinner*, No. 2001 KA 0455 at pp. 3-4.

The state appellate court next reviewed the evidence introduced at petitioner's

trial.

> The evidence introduced at trial demonstrated that the defendant and his
> friend had the marijuana with them when they walked into the Fastbucks store.
> Despite the fact that the defendant's friend carried the drugs in his pocket, the
> evidence is clear that the defendant had some dominion and control over the
> marijuana because the defendant told Tyler not to give all of his stuff away.
> The defendant's friend did not place any more marijuana on the counter after
> being so instructed by the defendant.
> The evidence also demonstrates that when the transaction was first
> mentioned, Tyler turned to the defendant and indicated that it was his call
> whether to sell the marijuana. The defendant never indicated that he did not
> want to sell the drugs. Instead, the defendant checked the amount of marijuana
> that had been placed on the counter by Tyler and then placed the bag back on
> the counter for the transaction to be completed. Furthermore, it was the
> defendant who accepted a check from the undercover officers for seventy-five
> dollars, which was higher than the original sixty dollars he had negotiated for
> the speakers alone. No other funds were transferred during the transaction. A
> reasonable trier of fact could have determined that the defendant was concerned
> in the sale of the marijuana and was therefore a principal to the offense.

*State v. Swinner*, No. 2001 KA 0455 at p. 4.

In connection with petitioner's argument that the State failed to rebut his

entrapment defense, the Louisiana First Circuit reasoned:

> Entrapment occurs when a state agent, to obtain evidence of the commission of
> an offense, induces another person to engage in conduct constituting an offense,
> which he is not otherwise predisposed to commit. *State v. Brand*, 520 So.2d
> 114, 117 (La. 1988). Whether a government agent induced an otherwise
> innocent person into committing a crime is a question for the jury. *State v.
> Brand*, 520 So.2d at 117.

As previously discussed, the evidence at trial demonstrated that the defendant and Tyler had the marijuana with them when they entered the store. When the undercover officers raised the issue of the drug transaction, the defendant did not indicate that he was not interested or that he would not participate. The officers testified at trial that it was their procedure to mention the possibility of a transaction once, but to drop the issue if the other person indicated that they were not interested. The defendant did not do so, and the transaction continued. The jury could have clearly found that the defense of entrapment was not established. There was no indication that the officers coerced the defendant to commit a crime that he would otherwise not commit.

For these reasons, this assignment of error is without merit.

*State v. Swinner*, No. 2001 KA 0455 at pp. 4-5.

This court finds that the above determination on the part of the state appellate court does not represent an unreasonable application of *Jackson*, *supra*, to the facts of this case. Accordingly, petitioner's claims, that the evidence was insufficient to support his conviction and his entrapment defense was improperly rejected, are without merit.

### Claim 3) Petitioner Lacked *Mens Rea* to Constitutionally be Found Guilty of Violating La. R.S. 40:981.3(A)(1)

La. R.S. 40:981.3(A)(1) makes it illegal to distribute or dispense marijuana within 1000 feet of school property. La. R.S. 40:981.3(C)(2) defines "school property", in pertinent part, as "any building or area owned by the state or by a political subdivision and used or operated as a playground or recreational facility and all parks and recreational areas administered by the office of state parks." La. R.S. 981.3(B) provides that lack of knowledge that the prohibited drug transaction occurred within a 1000 feet of one of the above-described areas, "shall not be a defense."

Petitioner argues that he could not constitutionally be found guilty of violating LSA-R.S. 40:981.3(A)(1) because he lacked *mens rea* in that he lacked knowledge of the fact that Fastbucks, where the drug transaction took place, was located within 1000 feet of a recreational area, specifically, the Tammany Trace. A similar argument was made in *United States v. Cross*, 900 F.2d 66 (6th Cir. 1990), wherein the defendant was convicted of distributing drugs within 1000 feet of a school, in violation of 21 U.S.C. § 845a, the "schoolyard statute". Cross argued that section 845a violated due process because it did not require him to have knowledge of the fact that the drug transaction was taking place within 1000 feet of a prohibited area. *Id*. at 69. The Sixth Circuit, however, determined that a lack of knowledge that the drug transaction is taking place within a prohibited area "does not violate due process." *Id*. In reaching this conclusion, the Sixth Circuit relied, in part, on the Second Circuit's opinion in *United States v. Falu*, 776 F.2d 46, 50 (2nd Cir. 1985), wherein "the court noted that section 845a does not criminalize otherwise innocent activity, for the statute applies only to persons who have violated 21 U.S.C. § 841(a)(1), which already contains a *mens rea* requirement - 'knowingly or intentionally...distribute...a controlled substance." *Cross*, 900 F.2d at 69.

La. R.S. 40:981.3(A)(1), like 21 U.S.C. § 845a, does not criminalize otherwise innocent activity as the statute applies only to persons who have violated La. R.S. 40:966A(1), which already contains a *mens rea* requirement - "knowingly or intentionally...distribute...a

controlled dangerous substance." Accordingly, the court finds that the statute's lack of a *mens rea* requirement does not constitute a violation of due process. As such, petitioner's claim for habeas corpus relief is without merit.

### Claim 4) Ineffective Assistance of Counsel

Petitioner claims trial counsel was ineffective in the following respects: 1) He failed to investigate and prepare a defense to the critical aspects of the case; 2) He did not allow petitioner to take the stand in his own defense; 3) He stipulated to the chain of custody of the evidence and did not call a forensic chemist to testify with regard to the validity of the drug report and the amount of the sample used in the drug testing; and, 4) He failed to object to the double enhancement of the sentence imposed and waived petitioner's presence while the court vacated the prior sentence after an illegal sentence had been imposed.[16]

The seminal case for adjudicating a habeas petitioner's ineffective assistance of counsel claim is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), which places on petitioner the burden of demonstrating not only that his counsel's performance was deficient, but also that he was prejudiced as a result of counsel's deficient performance. If a court finds that a petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong. *Id.*

---

[16]Rec. doc. 1, petitioner's supporting brief at pp. 25-26.

Under the deficient performance prong of the *Strickland* test, "... it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993),quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. A counsel's decision regarding whether to place a criminal defendant on the witness stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight." *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985). "'An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995), *cert. denied*, 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996), quoting *United States v. Acklen*, 47 F.3d 739, 742 (5th Cir. 1995), *cert. denied*, 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 893 (1997). To prove prejudice under the *Strickland* standard, a petitioner "... must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Petitioner argues that counsel was ineffective due to his failure to investigate and call potential witnesses. Petitioner, however, identifies only one witness, James Tyler, who counsel should have called. With regard to Tyler, petitioner acknowledges that if Tyler had been called, he would have exercised his Fifth Amendment right not to testify. However, petitioner argues that hearing Tyler exercise his Fifth Amendment right not to testify in

response to counsel's question as to whether it was petitioner's "call to sell the [m]arijuana", "would no doubt have had a strong influence on the jury during its deliberation."[17]

It is well-established that the failure to contact witnesses is not *per se* prejudicial to the point of warranting habeas relief. *See Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("complaints of uncalled witnesses are not favored, [in federal habeas review] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative"). In *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985), the Fifth Circuit noted that for a petitioner to show prejudice under *Strickland*, he must show that the testimony of the witnesses would have been favorable and that the witnesses would have testified at trial. Petitioner must show a reasonable probability that the uncalled witnesses would have made a difference in the result. *Alexander*, 775 F.2d at 603. There is a strong presumption that the failure of petitioner's counsel to call witnesses is a strategic choice. *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66 (1984).

In this case, the only uncalled witness which petitioner has identified is James Tyler. Petitioner, however, admits that Tyler would not have testified had counsel placed him on the stand, but rather, would have exercised his Fifth Amendment right not to testify.

---

[17]Rec. doc. 1, petitioner's supporting brief at p. 28.

Clearly, petitioner has failed to satisfy the above-described burden of proving that counsel was ineffective in failing to call Tyler as a witness at trial.

Next, petitioner claims he received ineffective assistance of counsel because he "felt like he needed to take the stand to tell the jury his side of the story", but "[d]efense counsel would not allow [him] to testify...."[18]

"A criminal defendant has a constitutional right to testify in his own behalf; it is an aspect of his right to defend himself, a right held in *Rock v. Arkansas*, 483 U.S. 44, 51-53, 107 S.Ct. 2704, 2709-10, 97 L.Ed.2d 37 (1987), to be implicit in the Fifth, Sixth and Fourteenth Amendments." *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir. 1991) (citations omitted); *see also White v. Cain*, 2006 WL 3703240, *4 (E.D. La. Dec. 11, 2006). A habeas petitioner, however, has the burden of proving that he was denied this constitutional right. As the court explained in *Turcios v. Dretke*, 2005 WL 3263918, *6 (S.D.Tex. Nov. 29, 2005), "a petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand. *Underwood v. Clark,* 939 F.2d 473, 475-76 (7th Cir. 1991)." The *Underwood* court specifically noted the potential problem posed if a habeas petitioner, arguing that counsel unconstitutionally denied him his right to testify, is not required to satisfy his burden of proof.

---

[18]Rec. doc. 1, petitioner's supporting brief at p. 30.

There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial." That's what Underwood did. His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, "I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf. My attorney told me I could not testify."

We agree with the First Circuit's ruling in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), that this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary-and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify-to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood*, 939 F.2d at 475-76.

In the instant matter, there is no evidence to prove petitioner's claim other than his statement to the effect that defense counsel denied him his constitutional right to offer testimony at trial. "Standing alone, such self-serving statements cannot be allowed to succeed or the criminal judicial process would become unworkable." *Turcios*, 2006 WL at *6, citing *Underwood*, 939 F.2d at 475-76. Accordingly, the court finds that petitioner has failed to meet his burden to establish that he is entitled to habeas corpus relief.

Petitioner next argues that counsel was ineffective by virtue of the fact that he stipulated to the chain of custody of the evidence, specifically, the marijuana. Petitioner,

22

however, offers no evidence to suggest any impropriety with regard to the chain of custody and, therefore, has failed to show how he was prejudiced by counsel's alleged failure to challenge the chain of custody. Petitioner also complains that if a "forensic chemist" had been called to the witness stand, he or she "would have shown that the amount [of marijuana involved] was small and was probably enough for only one cigarette." Petitioner asserts that the jury should have been aware of the small amount of marijuana involved in the transaction at issue and, therefore, that petitioner was facing "up to thirty years [imprisonment] for one marijuana cigarette."[19] A review of the trial transcript, however, reflects that the jury was aware of the amount of marijuana involved in the drug transaction at issue as the marijuana was offered into evidence and shown to jurors.[20] Accordingly, once again, petitioner has failed to show how he was prejudiced as a result of this alleged deficiency on the part of counsel.

Finally, petitioner claims that counsel was deficient due to his failure to object to the harsh sentence imposed upon him. Petitioner contends that as a result of counsel's deficiency in this regard, he received an unconstitutionally excessive sentence. According to petitioner, because "he was very young and still in school seeking his GED", and "had never had a prior drug charge," a "sentence between one and five years" would have been

---

[19]Rec. doc. 1, petitioner's supporting brief at p. 32.

[20]State rec., vol. 2 of 3, pp. 268-269.

23

appropriate. However, the 30-year sentence he received, which was later enhanced to a life sentence, was "most inappropriate". Petitioner charges that "[b]ut for [counsel's] failure to object, the sentence could have been changed."[21]

A review of the pertinent transcripts reflects that, contrary to petitioner's claim, counsel did object to both petitioner's 30-year sentence and to his enhanced life sentence. In connection with the initial imposition of a 30-year sentence, the trial court provided:

> After reviewing the pre-sentence investigation, this defendant is a fourth offender class. He is a 30-year-old man who has convictions beginning October 6 of 1988, Burglary and Contributing to the Delinquency of a Juvenile, pled guilty and sentenced to three years Department of Corrections, suspended two years probation. That was revoked in May of 1990. Again, on October 21 of that year, eight counts of Simple Burglary. The defendant was sentenced to three years Department of Corrections, two years probation and that again was revoked on that same date in May of 1990. Again, in Orleans Parish on October 18 of 1989, Simple Burglary of an inhabited dwelling in which he received a four year sentence with the Department of Corrections. Then in 1992, a theft which could well have been a misdemeanor because he received 60 days in the parish jail. Then in 1993, in October of 1993, the defendant was sentenced on a Simple Burglary of an inhabited dwelling to six years in the Department of Corrections.
>
> The pre-sentence investigation shows that this is an individual who has been involved in crime continuously. I find that any sentence other than that which I am about to give him would deprecate the seriousness of the defendant's crime. I find that he is in need of correctional treatment and a custodial environment that can be provided most effectively by his commitment to an institution. I find that there is an undue risk that during the period of any

---

[21]Rec. doc. 1, petitioner's supporting brief at p. 34.

probation, even if that was possible, which it isn't under the law, the defendant would commit another crime.[22]

In response, defense counsel attempted, albeit unsuccessfully, to persuade the court to reconsider its decision to impose a 30-year sentence upon petitioner, arguing:

> [B]y way of mitigation, the Court has failed to note the extremely small amount of marijuana that was involved in the case.... I think the Court has failed to consider by way of mitigation the actions of the police officers involved. First, by setting up this store front, where they chose to set it up, and by their actions which were arguably - - were certainly argued before the jury to be entrapment and for that also, the sentence itself being constitutionally excessive, I would move that the Court at this time reconsider the sentence.[23]

In connection with petitioner's multiple-offender adjudication, defense counsel tried, unsuccessfully, to have the multiple bill lodged against petitioner quashed.[24] Thereafter, the trial court determined petitioner to be third-felony offender and finding "that the instant offense is one of the offenses within the 15:529.1 provision normally spoken of as 'three strikes, you are out,' that there is a mandatory sentence in this case and that mandatory sentence, I now pronounce upon you, [is] life imprisonment without benefit of probation, parole or suspension fo sentence."[25] Defense counsel, at that point, argued unsuccessfully that the court should deviate from the mandatory life sentence given the "small amount of

---

[22]State rec., vol. 2 of 3, p. 324, lines 17-32; p. 325, lines 1-20.

[23]State rec., vol. 2 of 3, p. 326, lines 3-16.

[24]State rec., vol. 2 of 3, pp. 329-331 and 333-336, lines 1-13.

[25]State rec., vol. 2 of 3, p. 336, lines 23-32; p. 337, lines 1-9.

marijuana" at issue and given that petitioner's co-defendant, James Tyler, who was tried separately, was "convicted of simple possession of marijuana". Counsel argued that even though a life sentence is "statutorily mandated", "it is constitutionally excessive in this case" and therefore, "I would orally move the court to reconsider that sentence at this time."[26]

It is clear, based upon the above, that the court's imposition of a life sentence upon petitioner was not attributable to any deficiency on the part of defense counsel, but rather, was attributable to the fact that petitioner was a third-felony offender with a history of deviant behavior. Petitioner's claim of ineffectiveness is without merit.

### Claim 5) Habitual Offender Proceeding Was Unconstitutional

Petitioner argues that he was denied due process because he was adjudicated to be a multiple offender and sentenced to life imprisonment without an indictment. A comparable claim was raised in *Scott v. Cain*, 2008 WL 2185381 (E.D. La. Apr. 21, 2008), wherein the petitioner claimed that he should have been charged by an indictment since, as a multiple offender, he faced a life sentence. In addressing this claim, Magistrate Judge Wilkinson acknowledged that "[u]nder Louisiana law, 'prosecution' of an offense punishable by death or life imprisonment 'shall be instituted by indictment by a grand jury'.... La. Code Crim. Proc. Ann. art. 382." *Id.* at *10. However, the court also acknowledged that multiple offender or enhancement proceedings "are not determinative of guilt or innocence and do not

---

[26]State rec., vol. 2 of 3, p. 337, lines 20-32; p. 338, lines 1-6.

offer the accused the full range of due process and other constitutional rights normally attendant to such adjudications. *Buckley* [*v. Butler*], 825 F.2d [895,] 902-03 [(5th Cir. 1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 201 (1988)]." *Id.* Accordingly, "'[t]he Due Process Clause does not, ... require a State to adopt one procedure over another on the basis that it may produce results more favorable to the accused." *Parke v. Raley,* 506 U.S. 20, 32 (1992) *(quoting Medina v. California,* 505 U.S. 437, 451 (1992))." *Id.*

As was the case in *Scott, supra,* petitioner, in the instant matter, has identified no Supreme Court precedent or other federal authority to support his claim. Further, the court's research has located no such authority. There is nothing here that gives rise to a constitutional violation reviewable by this federal habeas court. To the extent petitioner alleges a possible misapplication of state law, though this court finds none, this would not constitute an independent basis for federal habeas relief. *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

Petitioner has failed to establish that the denial of relief on this claim was contrary to, or an unreasonable application of, Supreme Court law. Accordingly, petitioner is not entitled to federal habeas corpus relief.

### Claim 6) Habitual Offender Sentence Was Unconstitutional

Under the provisions of La. R.S. 15:529.1D(3), a judge, upon determining a defendant to be a multiple offender, is directed to "sentence him to the punishment prescribed

27

in this Section" and "vacate the previous sentence if already imposed". Petitioner asserts that

he is entitled to federal habeas corpus relief because the trial judge, in violation of Section

15:529.1D(3), did not vacate his initial 30-year sentence before finding him to be a third-felony

offender and sentencing him to life imprisonment.

In *Johnson v. Andrews*, 2006 WL 2294864, *5 (E.D. La. Aug. 4, 2006), Judge

Vance, addressing a claim virtually identical to the above claim, provided:

> By challenging Louisiana's failure to formally vacate his original sentence
> before imposing an enhanced sentence under LSA-R.S. 15:529.1, Johnson
> challenges the state's failure to follow its own sentencing procedures. Since 28
> U.S.C. section 2254 provides for federal habeas review only when a prisoner is
> being held in violation of the Constitution or laws of the United States, a
> prisoner's claim that he is being held in violation of a state law is not reviewable
> through federal habeas proceedings. *Haynes v. Butler,* 825 F.2d 921, 924 (5th
> Cir.1987); *Branan v. Booth,* 861 F.2d 1507 (11th Cir.2000).

Based upon the above, the court finds that petitioner's claim that the state district

court, in imposing his enhanced life sentence without vacating his initial 30-year sentence,

violated state law, is not subject to federal habeas corpus review. Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus

relief filed on behalf of petitioner, Thomas Swinner, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions,

and recommendation in a magistrate judge's report and recommendation within 10 days after

being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____8th_____ day of _____June_____, 2009.


LOUIS MOORE, JR.
United States Magistrate Judge